# Law Offices of Jan Meyer & Associates, P.C.

**1029 Teaneck Road**
**Second Floor**
**Teaneck, New Jersey 07666**
www.janmeyerlaw.com

**Phone:** (201) 862-9500
**Fax:** (201) 862-9400
**E-Mail:**srubin@janmeyerlaw.com

**Jan Meyer, Esq.***◊○
----------
**Richard A. Hazzard, Esq.***◊
**Noah Gradofsky, Esq.***◊
**Stacy P. Maza, Esq.***◊
**Richard L. Elem, Esq.***○
**Elissa Breanne Wolf, Esq.***◊
**Solomon Rubin, Esq.***◊
**Rachael E. Banks, Esq.***◊
----------
**Of Counsel:**
**Joshua Annenberg, Esq.***◊

**New York Office:**
50 East 42nd Street
Suite 1809
New York, New York 10017
----------------
**Admitted to Practice:**
New Jersey *
New York ◊
District of Columbia ○
U.S. Supreme Court ○
U.S. Court of Federal Claims ○
U.S. Court of Appeals for the Armed Forces ○
U.S. Court of Appeals for the Federal Circuit ○
-------------------------------------------
PLEASE RESPOND TO OUR NEW JERSEY OFFICE

August 27, 2010

**Electronically Filed and Regular Mail**
Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:    Freund v. Weinstein *et. al.*
              Docket No. 08-CV-1469 (FB)(MDG)

Dear Magistrate Judge Go:

    This firm represents Plaintiff Maurice Freund ("Plaintiff"), in the above-referenced matter.  Defendant Benjamin Hager ("Hager") filed a motion to compel Plaintiff to answer certain questions at a continuing deposition.  *Ct. Doc.* 149.  Please accept this letter in opposition to said motion.

**Plaintiff Should Not Have to Testify about Whether He Communicated with Any Governmental Officials as Part of Their Criminal Investigation of Eli Weinstein Because of the Public Interest Privilege**

    Confidential communications made to public officers are privileged where the public interest requires that such communications should not be divulged.  *People v. Keating* 286 A.D. 150,141  153 N.Y.S.2d 562,565 (1st Dept. 1955).  As such, "[i]t is settled that statements made by a witness to the District Attorney's office are protected by the public interest privilege."  *Sanchez by Sanchez v. City of New York* 201 A.D.2d 325,326  607 N.Y.S.2d 321  (1st Dept. 1994), citing *Melendez v. City of New York*, 109 AD2d 13, 21 (1st Dept. 1995).  Thus, a mere showing by a private litigant in a civil case that information

Honorable Marilyn D. Go
Docket No. 08-CV-1469 (FB)(MDG)
August 27, 2010
Page 2

sought would be helpful to secure useful testimony is not enough to override a demonstrated or manifest potential harm to the public good. *Doe v. Riback* 7 Misc.3d 341, 788 N.Y.S.2d 590 (Sup. 2005).

It appears that Defendant Weinstein is being investigated for vast fraud that goes substantially beyond the facts of this case. The Criminal Complaint against Defendant Weinstein alleges that he defrauded investors of at least $200 million. *Ct. Doc.* 149-2, Page 4 of 9, ¶2. In the case *sub judice*, there are only claims that he defrauded Plaintiff of $6,495,000. *Amended Complaint*, generally. As per statements by the U.S. Attorney's office, the investigation of Defendant Weinstein is ongoing. *Exhibit A*.

The true purpose for which Defendants desire to ascertain whether Plaintiff communicated with any governmental officials is so that they could use societal pressure to discourage Plaintiff and others who might be interested in communicating with the U.S. Attorney's Office about the criminal investigation from doing so. Plaintiff, as are most of the victims of Defendant Weinstein's fraud is an Orthodox Jew. *Ct. Doc.* 149-2, Page 4 of 9, ¶3. Traditionally Jewish religious law prohibited Orthodox Jews from participating in the prosecution of other Orthodox Jews in criminal proceedings. *Exhibit B*. There is a dispute among religious authorities on when this rule applies. *Id*.

At Plaintiff's continuing deposition, counsel for Defendant Weinstein, David Carlebach, Esq. questioned Plaintiff about his religious beliefs related to the matter. This is because Defendant Weinstein may be trying to use communal pressure to prevent his predominantly Orthodox Jewish victims from testifying against him in the criminal action against him. It is hard to come up with another explanation as to why Mr. Carlebach would have asked about Plaintiff's religious beliefs.

The public interest exception requires balancing of the litigant's need for production against the potential harm to the public from such disclosure. *Sanchez*, supra, 326. The public has an interest in ensuring that frauds of over $200 million are properly investigated. The Defendants do not explain how learning of any communication between Plaintiff and any governmental officials will provide useful information with regard to the civil case. It is worth noting that Defendant Weinstein's criminal defense attorney, Ephraim Savitt, Esq. attended the deposition and appeared to be advising Mr. Carlebach on what to ask. Thus, plainly Defendants are using the civil discovery for purposes of the criminal case. As such, Defendant Hager's motion with regard to this matter should be denied.

## Plaintiff Should Not Have to Testify about Any Settlement Discussions

Defendant Hager seeks to inquire about a check that was provided to Plaintiff's Maryland counsel pursuant to settlement discussions that, based on the date of the check, appear to have occurred in April 2009. Settlement discussions are generally privileged. *FRE* 408. Defendant Hager argues that the privilege was waived by Plaintiff's testimony at the prior deposition. However, at the Plaintiff's prior deposition, he was asked whether he received any money or property, without the question specifying whether it was received pursuant to a settlement proposal. *Ct. Doc.* 149-1, p. 128:14 – 129:4. Thus, there would

Honorable Marilyn D. Go
Docket No. 08-CV-1469 (FB)(MDG)
August 27, 2010
Page 3

have been no reason object based on the fact that it was related to settlement talks.  It was only from later questioning that it became apparent that the check was given pursuant to settlement discussions.  *Id.*

Separately, the settlement discussions are of no relevance.  Defendant Hager claims the information is relevant because "any monies accepted by plaintiff are admissible to offset plaintiff's damages claims."  However, Plaintiff testified at the continuing deposition that he did not believe the check was ever deposited, making the issue moot.  Plaintiff's Maryland counsel confirmed to me that the check at issue was never deposited in his attorney escrow account.

If the Court found it necessary, I would endeavor to obtain a declaration from Maryland counsel stating that check was never deposited.  But Defendant Hager presumably knows that the check was not deposited.  Defendant Hager never asked Defendant Weinstein about the check in discovery, although Defendant Weinstein would have first hand knowledge of the matter.  Presumably if payment was made, Defendant Hager would want evidence of same.  Instead, Defendant Hager inquired of Plaintiff, who has no first hand knowledge of the matter, as he is neither the payor or payee of the check in question.  As such, Defendant Hager's motion with regard to this matter should be denied.

**Plaintiff Should Not Have to Testify about Documents That Were Produced Prior to His First Deposition**

Plaintiff was previously deposed on November 2, 2009.  Defendant Hager's counsel indicated that there would be no further questions "with the exception of inquiries concerning the documents that I will demand and put in writing."  *Exhibit C*, p. 262:11-14.  As such, Plaintiff and Plaintiff's counsel assumed that the deposition would be limited as to additionally produced documents.  Instead, Defendant Hager chose repeatedly to go over matters that were addressed at the prior deposition that had nothing to do with any supplemental document production.  However, because I do not have a copy of the deposition transcript, I cannot demonstrate the full extent to which this was the case.

The documents which are attached as Exhibit E of the Hager Defendant's motion were provided prior to Plaintiff's deposition conducted on November 2, 2009.  When I objected on that basis, Hager's counsel repeatedly stated incorrectly that the documents were produced after the November 2, 2009 deposition.  Ct. Doc. 149-1, 81-23; 82:13; 84:25-85:1.  This is incorrect.  Documents bates stamped MF87 – MF253 were all produced on July 8, 2009.

The Hager Defendants argue that even if the documents marked as Exhibits 16 and 17 were produced by after the first deposition, the questions about them are only being asked because they somehow relate to the loan document marked as Exhibit 15 at the deposition, which was produced after the first deposition.  However, the Hager Defendants do not explain how the documents marked as Exhibits 16 and 17, which appear to be communication between Plaintiff and Defendant Hager, in any way relate to the loan

Honorable Marilyn D. Go
Docket No. 08-CV-1469 (FB)(MDG)
August 27, 2010
Page 4

document that was marked as Exhibit 15.  As such, Defendant Hager's motion with regard to this matter should be denied.

## Plaintiff Should Not Have to Testify about Communications He Had with His Wife Because of the Marital Communication Privilege

Communications between husband and wife are generally privileged.  CPLR § 4502 (b).  As such, Plaintiff should not be required to testify about any communications with his wife.  Defendant Hager argues that Plaintiff should be compelled to testify because the questions deal with business.  However, there is no all purpose business exception to the marital communication privilege.  *Atlantic Richfield Co. v. Triad Petroleum, Inc.* 120 F.R.D. 471 (1988).

The Hager Defendants seek to inquire whether Plaintiff spoke to his wife about a loan that he took from a certain company of which Plaintiff's wife is a shareholder.  But there is nothing that establishes that Plaintiff's wife had a business role with the company such as being an officer, director, employee, etc.  Being a shareholder does not mean that she has any role in the management or decision-making process of the company.  Plaintiff testified that he did not speak to any other shareholders about the loan.  *Ct. Doc.* 149-1, p. 22:5 – 23:12.  Thus, if Plaintiff did speak to his wife about the loan, it would have presumably been because of the marriage and not because of her role as a shareholder.  Where the communication is related to business but also marital finances, such communication is privileged.  *Joel v. Weber* 581 N.Y.S.2d 579 (Sup. 1992).  As such, Defendant Hager's motion with regard to this matter should be denied.

We thank Your Honor for your attention to this matter.

Respectfully submitted,

Solomon Rubin

cc:   Lewis Brisbois Bisgaard and Smith, LLP
      Mark K. Anesh, Esq. (by ECF August 27, 2010)
      Cristina Yannucci, Esq. (by ECF August 27, 2010)

      David Carlebach, Esq. (by ECF August 27, 2010)

      Heller, Horowitz & Feit, P.C.
      Martin Stein, Esq. (by ECF August 27, 2010)

      Golenbock Eiseman Assor Bell & Peskoe LLP
      Jeffrey Golenbock (by ECF August 27, 2010)
      Laura Sulem (by ECF August 27, 2010)